# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1772 | **DATE** | 1/16/2004 |
| **CASE TITLE** | Terry L. Boebel vs. Combined Insurance Company of America | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

> Defendant's Motion for Summary Judgment [Doc. 45]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons given in the attached Memorandum Opinion, Defendant's motion for summary judgment [Doc. 45] is GRANTED in its entirety. All other pending motions are moot and terminated. This case is closed.

*David H. Coar*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | | |
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | JAN 16 2004 | | |
| | Notified counsel by telephone. | | | | |
| X | Docketing to mail notices. | | | | |
| X | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| SLF (lc) | courtroom deputy's initials | | date mailed notice | | |
| | | | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TERRY L. BOEBEL,                    )
                                    )        No. 02 C 1772
                    Plaintiff       )
                                    )
                                    )        HONORABLE DAVID H. COAR
        v.                          )
                                    )
                                    )
COMBINED INSURANCE COMPANY          )
OF AMERICA,                         )
                                    )
                    Defendant       )
                                    )

DOCKETED
JAN 1 6 2004

MEMORANDUM OPINION AND ORDER

Terry L. Boebel ("Boebel" or "Plaintiff") is one of ten former and current female employees who

filed a lawsuit on December 14, 2001, seeking to represent a class of women employed by

Combined Insurance Company of America ("Combined" or "Defendant"). This lawsuit, before

the late Judge James Alesia, alleged hostile work environment, retaliation, and sex discrimination

against women on a class wide basis. Judge Alesia objected to the joinder of the ten named

plaintiffs in a class action suit, and instructed them to file an amended complaint. However, nine

of the ten plaintiffs (including Boebel) filed a motion to dismiss their claims. On February 12,

2002, Judge Alesia dismissed these nine plaintiffs without prejudice. On March 8, 2002, eight of

the nine plaintiffs, including Boebel, filed individual lawsuits. Before this Court is Defendant's

motion for summary judgment on Plaintiff's sex discrimination/harassment, and retaliation

claims. For the reasons set forth below, Defendant's motion for summary judgment is GRANTED in its entirety.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 573 (7th Cir. 2003) (quoting Fed. R. Civ. P. 56(c)).

When evaluating a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party and makes all reasonable inferences in her favor. See Haywood v. Lucent Technologies, 323 F.3d 524 (7th Cir. 2003). The Court accepts the non-moving party's version of any disputed facts, but only if those facts are supported by relevant, admissible evidence. Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996).

The moving party has the burden of demonstrating the absence of genuine issues of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995). If the moving party meets this burden, the non-moving party must set forth specific facts that demonstrate the existence of a genuine issue for trial. Rule 56(e); Celotex, 477 U.S. at 324. To successfully oppose the motion for summary judgment, the non-moving party cannot rest on the pleadings alone but must designate specific facts in affidavits, depositions, answers to interrogatories, or admissions that establish that there

is a genuine triable issue.  <u>Selan v. Kiley</u>, 969 F.2d 560, 564 (7th Cir. 1992).


## DISCUSSION

### I. Overview of Plaintiff's Claims

Plaintiff's allegations of discrimination are divided into three main categories: (1) hostile

environment based upon sexual harassment; (2) sex discrimination as a result of the disparity in

the quality of assignments provided to Plaintiff and failure to promote because of her gender; and

(3) retaliation by Combined supervisors because of Plaintiff's complaints of discrimination.  For

efficiency purposes, the Court will provide a separate section of undisputed facts for each

category of alleged discrimination.  All facts are taken from the Parties' Local Rule 56.1 (a)(3)

and (b)(3) Statements of Undisputed Facts.  All facts, unless noted otherwise, are undisputed,

with all inferences resolved in favor of the non-movant.  At the outset, however, the Court will

set forth the employment hierarchy system at Combined, and Plaintiff's employment history with

Combined.

### A.  Combined's Employment Structure[1]

The entry-level position at Combined is a Sales Agent.[2]  Sales agents are primarily

responsible for selling insurance door-to-door.

---

[1] Combined objects to the attempt to construe its workforce in a strict hierarchal framework.  The Court notes that in the actual work force, lines and responsibilities may blur.  However, for the purpose of analyzing Defendant's summary judgment motion, it is important to examine Combined's employment structure in order to analyze typical employee duties, and employee accountability.

[2] The following positions are considered comparable to the Sales Agent position: Licensed Sales Agent or Representative, Customer Service Specialist, and New Business Specialist.

A Sales Agent reports to his or her Sales Manager.[3] Sales Managers also sell insurance door-to-door; however, Sales Managers also provide assistance to the Sales Agents they supervise, including training. Sales Managers also do paperwork and recruit Sales Agents to work for Combined.

A Sales Manager reports to his or her District Manager. While District Managers are primarily responsible for deciding how to divide assignments between Sales Managers, Sales Managers and District Managers can work jointly to divide assignments. (Pl. Resp. to Def. Facts, ¶22[4]). District Managers are also responsible for the supervision of Sales Managers.

District Managers report to their Sub-Regional Manager. A Sub-Regional Manager will report to his or her Regional Manager. A Regional Manager will report to his or her Divisional Manager. Sub-Regional Managers, Regional Managers, and Divisional Managers are able to sell insurance as well. (See Def. Resp. to Pl.'s Facts, ¶14[5]). However, some of the employment duties particular to Sub-Regional Managers and Regional Managers include supervising District Managers and Recruiting new Sales Agents.

### B. Plaintiff's Employment History With Combined

Boebel began her employment with Combined in 1989, in the Midwest Division (located in Wisconsin) as a Sales Agent. Boebel spent the greater part of the next eleven years employed

---

[3] The following positions are considered comparable to the Sales Manager Position: Customer Service Manager, and New Business Manager.

[4] "Pl. Resp. to Def. Facts." refers to Plaintiff's Response to Defendants Revised Local Rule 56.1(a)(3) Statement of Undisputed Material Facts.

[5] "Def. Resp. to Pl. Facts" refers to Defendant's Response to Plaintiff's Local Rule 56.1(b)(3)(B) Statement of Additional Material Facts.

with Combined, holding various positions, and spending time in three different states—Iowa, Wisconsin, and Illinois. Boebel's first promotion at Combined came in 1991, when she was promoted to the position of a District Manager in Wisconsin. Boebel then occupied various sales positions in Wisconsin and Illinois with Combined until 1994, when she resigned to work in the field of investment insurance.

In December 1995, Boebel returned to Combined as a Sales Agent, under the supervision of Ray Galindo ("Galindo"). In September 1996, Galindo promoted Boebel to the position of District Manager. The Plaintiff worked in various sales positions in Iowa, Illinois, and Wisconsin, until she resigned from Combined, in 1998.

In December 1998, Boebel returned to Combined, this time to work in Wisconsin. Plaintiff resigned in 1999. In July 1999, Boebel returned to Combined as a Customer Service Agent in Iowa, working under Sales Manager Bonnie Shaffer ("Shaffer") and District Manager Lyle Meisner ("Meisner"). Boebel was promoted to the position of Sales Manager in Iowa in December 1999. Plaintiff resigned for the final time in September 2000.[6]

## II. Timeliness of Plaintiff's Allegations

Before the merits of Boebel's claims can be addressed, the Court must address whether any of Boebel's allegations of discrimination are time-barred. In Illinois, a plaintiff must file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") or equivalent state agency within 300 days after the "alleged unlawful employment practice." 42

---

[6] Boebel alleges that the motivations for her resignations in 1998, 1999, and 2000 were related to sex discrimination, the failure to receive quality assignments because of her gender, the intolerable conditions she faced because of the sex based harassment she was subjected to, and the failure to receive a promotion to District Manager in June 2000.

U.S.C. § 2000 e-5(e)(1). The 300-day limit begins to run when the defendant has taken the action that injures the plaintiff and when the plaintiff knows that she has been injured. <u>Sharp v. United Airlines</u>, 236 F.3d 368 (7th Cir. 2001).

Boebel filed her charge of discrimination with the EEOC on January 16, 2001. Therefore, the Defendant contends that any discrete acts of discrimination that occurred prior to March 22, 2000 are time-barred.[7] The Court agrees with the Defendant, and in analyzing Plaintiffs' sex discrimination and retaliation allegations, all discrete acts that occurred prior to March 22, 2000 are time-barred. However, in analyzing Defendants' sexual harassment/hostile work environment claims, the Court will consider all events that occurred during Boebel's employment with Combined from July 1999 until September 2000.

A recent Supreme Court decision assists in clarifying the timeliness requirement. In <u>National Railroad Passenger Corp. v. Morgan</u>, 536 U.S. 101 (2002), the Court held that a plaintiff must file a charge for discrete acts of discrimination (such as termination, failure to promote, denial, or transfer) that occur within 300 days of the date of the act or "lose the ability to recover from it." <u>Id</u>. at 110.

However, because hostile environment claims, " are based on the cumulative effect of individual acts" ( <u>Id</u>. at 115), the Court held that incidents constituting a hostile work environment are part of one unlawful employment practice, and the employer may be liable for all acts that are part of the single claim. Therefore, the employee need only file a charge within 300 days of any act that is part of the hostile work environment. <u>Id</u>. at 118.

---

[7] The relevant discrete acts of alleged discrimination in this case include poor assignments, failure to promote, involuntary transfer, retaliation, and constructive discharge

However, if acts occurred outside of the limitations period, they still must have some connection to the events that occurred within the limitations period. Id. at 118. ("Intervening actions" may make incidents outside the period no longer part of the same hostile environment claim. Id.). Further, a significant gap between the acts within the limitations period and those outside of it may be a bar to the Plaintiff's ability to rely upon those acts outside of the limitations period. See Garrison v. Burke, 165 F.3d 565, 570 (7th Cir.1999) (an attack that took place outside of the limitations period did not "reinforce" acts within period because of a two-year gap between them. Id.)

The incidents that occurred to Boebel at Combined prior to July 1999 are not sufficiently connected to those events that occurred between July 1999 and September 2000, and do not constitute a "continuing violation." " A continuing violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character bas a violation did not become clear until it was repeated during the limitations period." Dasgupta v. University of Wisconsin Board of Regents, 121 F.3d 1138, 1139 (7th Cir. 1997). A Plaintiff could receive relief for a time-barred act by linking it with one within the limitations period. Doe v. R.R. Donnelly & Sons Co., 42 F.3d 439, 445 (7th Cir. 1994). Boebel testified that she resigned from Combined in 1998 and 1999 because of the intolerable working conditions caused by sex discrimination. This testimony indicates that Boebel was cognizant of the potentially discriminatory nature of the incidents prior to July 1999 when they . Further, there is a significant time gap between the events that occurred prior to July 1999. Therefore, only those events occurring between July 1999 and September 2000 will be considered in Plaintiff's hostile work environment claim.

## III. Plaintiffs' Allegations of Sexual Harassment/Hostile Work Environment

### A. Boebel's Allegations

Boebel alleges that she was subjected to a hostile work environment on the basis of her gender, and that the following conduct contributed to this hostile work environment. Plaintiff alleges that Meisner: (1) discriminated against her by giving her poor assignments, failed to promote her, prevented her from performing the required duties of a Sales Manager, and denied overrides; (2) harassed her when he was her District Manger; (3) yelled, criticized, and used demeaning remarks toward her; (4) monitored her excessively; (5) demanded more from her than from men (including the requirement of mandatory attendance at all meetings). Plaintiff also alleges that Meisner's supervisor, Galindo: (1) failed to stop Meisner from harassing other women after Combined became aware of his conduct; (2) transferred Boebel from Meisner's district to John Miller's ("Miller") district involuntarily; (3) placed a 100 call requirement on Boebel; and (4) failed to take effective remedial actions when Boebel complained about Meisner. Boebel also alleges constructive discharge as a consequence of this hostile work environment.

Before addressing Boebel's allegations of discrimination, the Court notes that the incidents in claim 1 (poor assignments, denial of a promotion, denial of ability to perform job duties, denial of overrides) are the same incidents Plaintiff claims resulted in sex discrimination and subsequent adverse employment decisions. The Court agrees with Defendant that these incidents are more appropriately addressed in Plaintiff's sex discriminations allegations, and should only be analyzed under one theory of discrimination. See Morgan, 536 U.S. at 115-116 ("Hostile work environment claims are different in kind from discrete acts.").

*1. Boebel's Claims of Harassment/Hostile Work Environment Created by Meisner*

The Plaintiff suffered a heart attack in January 2000. In February 2000, Meisner commented that Boebel suffered from her heart attack because of a lack of sex. Meisner repeated this comment to Boebel in May 2000. Boebel also divorced her husband in the year 2000. After her divorce, Meisner would tell Plaintiff that if she had a boyfriend, she would be in a better mood. (Pl. Facts, ¶236[8]). Meisner would comment to others that Boebel was unable to keep a husband, and would remark that there was a gentleman with whom Boebel could have an affair. (Id. at ¶¶237, 240).

During team meetings, when Meisner was Boebel's District Manager, he would tell jokes of a sexual nature. Boebel also alleges that Meisner constantly screamed at, demeaned, and criticized her. Meisner would often scream at her during morning meetings. Further, Plaintiff alleges that she and all the women were required to attend all team meetings, while the men were not. (Pl. Facts, ¶¶208-219). Plaintiff had to engage in extensive travel to complete her assignments, as they were far in distance from one another. (Id. at ¶205). Boebel also felt that Meisner and his wife, Sharon, were following up and checking up on her, which is behavior Plaintiff does not believe occurred with male employees. (Id. at ¶249). Boebel verbalized these complaints to Lyle and Sharon Meisner.

*2. Boebel's Allegations of Hostile Work Environment Created by Galindo*

Boebel made various complaints to Galindo, Meisner's supervisor, about the way she was

---

[8]"Pl. Facts" refers to Plaintiff's Local Rule 56.1(b)(3)(b) Statement of Additional Material Facts.

treated by Meisner. In addition to the complaints concerning meeting attendance requirements, Plaintiff told Galindo that Meisner: (1) would not hand out blocks of business to her (which meant she would only receive individual assignments), but that Miller did receive blocks of business (Pl. Facts, ¶321); (2) would not allow her to complete her Sales Manager duties (Id. at ¶322); (3) would use his wife Sharon to hand out assignments (Id. at ¶323); and (4) would give Miller a higher percentage of his overrides than he did to Boebel (Id. at ¶324). Galindo subsequently transferred Boebel to Miller's district.

After the transfer to Miller's district in June 2000, Galindo imposed upon Boebel the requirement that she "write 100 call" (meaning that she sell 100 units of insurance in one week), in order to keep her Sales Manager position. Galindo imposed the 100 call requirement because he felt she had a lack of new sales, a lack of desire to attend meetings, and a lack of desire to train new Sales Agents or have people report to her.

### 3. Sexual Harassment of Other Women Employed With Combined

#### a. Allegations of Harassment by Meisner

Boebel often heard Meisner remark on the size of Bonnie Shaffer's ("Shaffer") chest. After Shaffer lost a significant amount of weight, Meisner remarked that if she lost any more weight, she would topple over. Neither party seriously disputes that this remark was in reference to Shaffer's chest size. Boebel also heard Meisner refer to Shaffer and Patricia Schams as bitches.

#### b. Allegations of Harassment by Others

In March 2000, there was an incident at a Combined "Ardmore."[9] There were rumors that

---

[9] An "Ardmore" is a gathering of sales people who meet in a central location, typically in a hotel, to sell insurance, and to attend various meetings and training sessions.

several of the attending Sales Agents (both male and female) were naked in a hot tub together. Boebel was alerted to these rumors by Eric Brown, a Sales Agent.

At the same March 2000 Ardmore, a female Sales Manager wore a short skirt and high heels, and all of the male employees stared at this woman. This upset Boebel because she heard that this Sales Manager engaged in sexual relations with a number of male employees, and because of this, received preferential treatment.

### C. Analysis

Title VII's prohibition against sex discrimination protects employees against unwelcome sexual advances that create an offensive or hostile work environment. <u>Meritor Savings Bank, FSB v. Vinson</u>, 477 U.S. 57 (1986). Harassment need not be linked to an economic quid pro quo; rather, it encompasses all forms of conduct that unreasonably interfere with an individual's work performance or create an intimidating, hostile, or offensive working environment. <u>Id.</u>

For the harassment to be actionable, it must be sufficiently severe or pervasive so as to alter the conditions of the victim's employment and to create an abusive working atmosphere. <u>Meritor</u>, 477 U.S. at 67. The statute protects the worker against conduct a reasonable person might find hostile or abusive. However, if the victim does not subjectively regard the environment as abusive, the conduct has not actually altered the victim's employment and there is no Title VII violation. <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 20 (1993). Whether harassment is sufficiently severe or pervasive must be determined by evaluating all of the circumstances, including, "the frequency of the discriminating conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the worker's performance." <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 787-88.

"The critical issue is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Oncale v. Sundower Offshore Services, Inc., 523 U.S. 75, 80 (1998). Inappropriate conduct that is inflicted regardless of sex is not be addressed by Title VII. Holman v. Indiana, 211 F.3d 399, 403 (7th Cir. 2001). "The discrimination laws do not mandate admirable behavior from employees, through their supervisors or other employees. Instead, the law forbids an employer from creating an actionably hostile work environment for members of protected classes." Russell v. Board of Trustees of University of Illinois at Chicago, 243 F.3d 336 (7th Cir. 2001).

The Court finds that Plaintiff's claim of a hostile work environment cannot survive summary judgment. Meisner's conduct and comments, undoubtedly inappropriate in a work environment, and particularly insensitive to Plaintiff's heart attack, do not rise to the level of severe and pervasive workplace harassment based upon gender. Although several of Meisner's comments have sexual overtones, those comments were not sufficiently severe or pervasive for an actionable hostile work environment cause of action.

Plaintiff argues that when Meisner's sexual and non-sexual comments are analyzed together, she presents sufficient facts for a reasonable trier of fact to find a hostile work environment. The Seventh Circuit has held that a series of non-sexual incidents that singly may not constitute adverse employment actions may collectively amount to a discriminatory hostile work environment. See Haugerud v. Amery School District, 259 F.3d 678, 692 (7th Cir. 2001). However, all incidents and comments, both sexual and non-sexual, must be sufficiently severe or pervasive to constitute a cognizable hostile work environment claim. Even when analyzing the sexual and non-sexual incidents together as part of one hostile environment cause of action,

-12-

Boebel's claim does not rise to the level of being sufficiently severe or pervasive that a reasonable trier of fact could determine that Boebel's work environment was hostile based upon her gender.

Boebel also contends that the harassment she faced, in light of the harassment that other women at Combined were subjected to (some Plaintiff observed and some Plaintiff did not observe), is sufficient to defeat Defendant's motion for summary judgment on this issue. Incidents directed at others do have some relevance in determining whether a hostile work environment existed. (See, Hirsae-Doi v. U.S. West Communications, Inc., 61 F.3d 777, 782 (10th Cir. 1995)); Hall v. Gust Const. Co., Inc., 842 F.2d 1010, 1015 (8th Cir. 1988)). However, "the impact of 'second-hand harassment' is obviously not as great as the impact of harassment directed at the plaintiff." Gleason v. Meisrow Financial, Inc., 118 F.3d 1134, 1144 (7th Cir. 1997) (citing Rennie v. Dalton, 3 F.3d 1100, 1107 (7th Cir. 1993)). It is reasonable to conclude that the incidents that occurred to other women at Combined had some impact on Boebel's work environment. However, even when the Court analyzes Boebel's claim in light of the second hand harassment, and the sexual and non-sexual comments directed towards Boebel, her claim still fails to allege incidents sufficiently severe or pervasive that a reasonable trier of fact could conclude that Boebel's work environment was hostile because of her gender.

Also fatal to Plaintiff's claim is the fact that Boebel admits that from July 1999 through September 2000, she would usually only see Meisner once a month or once every other month. Further, Boebel does not have any recollection of Meisner making any sexual or inappropriate comments after she transferred to Miller's district in June 2000. This fact makes it extremely difficult for Plaintiff to argue that Meisner's comments constituted harassment so severe or pervasive as to render Combined a hostile work environment for Boebel based on her gender.

Therefore, Boebel cannot establish that she was constructively discharged because of her working conditions.[10]  Defendant's Motion for Summary Judgment on the issue of hostile environment/ sexual harassment, and constructive discharge as a consequence of that harassment, is GRANTED.

## IV. Sex Discrimination

### A. Boebel's Allegations

Boebel alleges that the following incidents of sex discrimination occurred between March 22, 2000 and September 2000.  Plaintiff alleges, because of her gender, that she was: (1) given poor assignments under both Meisner and Miller that adversely affected her income; (2) denied a promotion to District Manager in the Dubuque, Iowa area (Miller was promoted to that position); (3) prevented from performing the duties of a Sales Manager under Meisner or Miller; (4) denied an equal share of overrides from Meisner's sales; and (5) constructively discharged.

### B. Facts

#### 1. Poor Assignments Under Meisner and Miller

At her deposition, Boebel testified that Meisner would pull renewal cards out of Boebel's assignments, and give those assignments to his wife, Sharon, a practice that Plaintiff does not believe would occur with Miller's assignments. (Pl. Facts, ¶187).  Boebel also testified that Meisner would pull out a large renewal from Boebel's assignment claiming that there was a problem with it, when he would not pull a large renewal from the men's assignments.  (Id. at

---

[10] "To demonstrate constructive discharge, the plaintiff must show that she was forced to resign because her working conditions, from the standpoint of the reasonable employee, had become unbearable." E.E.O.C. v. University of Chicago Hospitals, 276 F.3d 326, 331 (7th Cir. 2002).  "We require the plaintiff to demonstrate a discriminatory work environment even more egregious than the high standard for hostile work environment." Id. at 331-32 (citing Tutman v. WBBM-TV, Inc., 209 F.3d 1044, 1050 (7th Cir. 2000)).

¶188).[11]  Additionally, Plaintiff testified that Meisner gave Boebel smaller assignments on a daily or weekly basis, while he gave Miller "blocks of business" (meaning assignments for his areas all at once). (Id. at ¶194).

## 2. Denial of Promotion to District Manager in 2000

In June 2000, Meisner recommended that Miller be promoted to District Manager, and in June 2000, Galindo promoted Miller to District Manager for the Dubuque, Iowa area. Boebel would have taken a District Manager promotion in the Dubuque area, as it was closer to her home than her current assignments. Sometime in the year 2000, Plaintiff expressed to Galindo that she wanted to be a District Manager in the Dubuque, Iowa area.[12]  Plaintiff alleges that Meisner took steps to prepare Miller for the District Manager position, including assigning Miller to train people, conducting field training with Miller, and sitting in when Miller participated in meetings, steps that Meisner failed to take with Combined's female employees. (Pl. Facts, ¶361-63).

## 3. Prevention of Performance of Sales Manager Duties

At Combined, Sales Managers were typically given assignments, and would then divide those assignments among his or her Sales Agents (Pl. Fact, ¶161). Sales Managers were handed an actual box (called a route box) with the "route month" in it. ( Id). Each county is broken down into route months. (Id). Boebel alleges that she was not allowed to hand out assignments to her Sales Agents (Id. at ¶163). Further, at her deposition, Boebel testified that the only Sales Manager duty that she was allowed to perform was to train new salespeople (which meant she had to split a

---

[11] This practice is commonly known as "cherry picking" and is not deemed acceptable behavior at Combined.

[12] Plaintiff cannot recall if she expressed this view to Galindo before or after Miller received the position in June 2000.

week's worth of work with that trainee). (Id).

### 4. Denial of Overrides from Meisner's Sales

For a Sales Manager, an override is the percentage he or she makes from the renewals and new sales of their Sales Agents. Another type of override is the percentage a Sales Manager receives from the renewals and new sales of his or her District Manager. Sales Managers can also earn overrides from their own renewals and new sales. District Managers have discretion to decide whether to give a Sales Manager overrides. If a District Manager's overrides are not put on a Sales Manager's overrides, then the overrides revert back to Combined. Boebel alleges that Miller received more overrides from Meisner than she did when they worked as sales managers under him.

### C. Analysis

Because the Plaintiff has not presented any direct evidence of sex discrimination, the Court must operate under the McDonnell-Douglas burden shifting test. McDonnell Douglas Corp v. Green, 411 U.S. 792 (1973). Under the McDonnell-Douglas burden shifting test, a plaintiff must establish four elements for a prima facie case of discrimination: (1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) the defendant treated similarly situated employees outside her class more favorably. Simpson v. Borg-Warner Automotive, Inc., 196 F.3d 873, 876 (7th Cir. 1999). If the plaintiff succeeds in demonstrating his or her prima facie case with evidentiary-quality materials, the burden shifts to the defendant to articulate a legitimate business justification for the action. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993). Once the defendant does so, the plaintiff must present sufficient evidence to create a triable issue with respect to whether this justification is

-16-

pretextual. Id. at 508.

The two disputed factors of the McDonnell-Douglas paradigm are the third and fourth prongs. The parties dispute whether the decisions regarding Plaintiff's employment were materially adverse, and secondly, whether Boebel was similarly situated to males who allegedly received more favorable treatment by Combined. Specific examples of adverse employment actions are identified in 42 U.S.C. § 2000 e-2(a)(1), (2), including discrimination with respect to, "compensation, terms, conditions, or privileges of employment or limiting employees in any way that would deprive or tend to deprive any individual of employment opportunities." The alleged adverse action must be material. Rabinovitz v. Pena, 89 F.3d 482, 488 (7th Cir. 1996) (citing Crady v. Liberty Nat'l Bank and Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)). Further,

> A material adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion, evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

Id.

Boebel's allegations of inferior assignments[13] do not constitute a materially adverse employment action. Plaintiff's primary complaint about her assignments concerned the level of difficulty of her assignments compared to the assignments men received. However, the Plaintiff's superior years of experience with Combined (compared to the men in her district) made it reasonable that Plaintiff would receive more difficult assignments. Additionally, these assignments did not adversely affect Plaintiff's salary. In fact, Plaintiff made more than the men she compares

---

[13] "Inferior assignments" refers to assignments with a poor premium base, and "clean up assignments." A clean up assignment is a renewal assignment that someone else has already attempted. Either contact has been made with the customer, and no sale was made, or no contact was made, because the customer is difficult to contact. (Pl. Facts, ¶134).

herself to. (See Pl. Resp. to Def. Facts ¶134). In sum, although Boebel received assignments that she perceived to have been more difficult than those that men received, because she has not demonstrated an adverse impact on her salary based upon her assignments, they cannot be deemed inferior. Therefore, the assignments she received cannot constitute an adverse employment action.

Further, Plaintiff has not provided evidence to demonstrate that her administrative responsibilities as a Sales Manager[14] were any different than those of the male Sales Managers in Meisner's or Miller's Districts. Boebel's evidence only shows that she did not like the duties that Meisner's and Miller's Sales Managers had to perform. (See Def. Resp. to Pl.'s Facts, ¶¶161-162). "Not everything that makes an employee unhappy is an actionable adverse action." Smart v. Ball State University, 89 F.3d 437, 441 (7th Cir. 1996). Because Boebel's duties as a Sales Manager were comparable to those of all other Sales Managers in her District, Boebel has failed to demonstrate that any materially adverse action occurred in relation to her duties as a Sales Manager.

Finally, Boebel has not provided sufficient evidence to indicate that Meisner's procedure for distributing overrides from his sales was an adverse employment action. Meisner's decision to provide overrides derived from *his own sales* was completely discretionary. These overrides can be deemed "sporadic bonuses." Therefore, Plaintiff cannot argue that these overrides were a component of her salary. A denial of a bonus is not sufficiently materially adverse when it is, "sporadic, irregular, unpredictable, and wholly discretionary on the part of the employer." Fyfe v. City of Fort Wayne, 241 F.3d 597, 602-03 (7th Cir. 2001); See also Rabinovitz, 89 F.3d at 488 (the loss of a bonus is not an adverse employment action when the employee is not automatically

---

[14] The responsibilities Boebel alleges she could not complete were to break down the route box into smaller assignments and hand them out to her Sales Agents. (See Pl. Facts, ¶¶161-63).

entitled to the bonus). Further, the discrepancy between the amount of overrides received between

Plaintiff and Miller averaged less than ten dollars a month. (See Def. Facts, ¶ 3).[15] This small

discrepancy in the amount of overrides between Boebel and Miller prevents Plaintiff from arguing

that this was a materially adverse employment action.

Therefore, the only allegation sufficient for analysis under the fourth prong of the

McDonnell-Douglas burden shifting test is whether the failure to promote Boebel to the 2000

District Manager position was the result of sex discrimination. The Plaintiff has raised a genuine

issue of material fact as to whether she was as qualified as Miller for the Dubuque District Manager

position, based on her prior experience as a District Manager, and largely favorable performance at

Combined. (See Pl. Facts, ¶¶371-374).

Assuming that Plaintiff can meet the burden of establishing a prima facie case of

discrimination under the McDonnell-Douglas burden-shifting the test, the burden now shifts to the

Defendant to provide a legitimate, non-discriminatory reason for the promotion of Miller over

Boebel. Combined provides four reasons that were articulated by Galindo, explaining why Galindo

chose Miller over Boebel for the District Manager position.[16] Miller: (1) demonstrated more

interest in the position; (2) threatened to quit if he did not receive the position; (3) lived in the

Dubuque area and had more familiarity selling in that area; (4) was generally "more qualified" for

---

[15] The record for the distribution of overrides during the week of February 7, 2000 is
missing. However, because discrete acts of discrimination prior to March 22, 2000 are time-
barred, this missing record is not relevant in the analysis of whether the denial of overrides was a
material adverse action between March 22, 2000 and June 2000 (when Boebel left Miller's
district).

[16] This District Manager position did not exist prior to June 2000, when Miller received
the promotion. The position was created at that time for Miller.

the Dubuque District Manager position than Boebel.[17]

Since Combined has proffered legitimate, nondiscriminatory reasons for the decision to promote Miller, the burden shifts to Boebel to show that these were not the true reasons for Miller's promotion over Boebel. See Rush v. McDonald's Corp., 966 F.2d 1104, 1115 (7th Cir. 1992). Although there is a genuine dispute as to whether Boebel and Miller were "similarly situated", which factors into whether Miller was "more qualified" than Boebel, Plaintiff has failed to show that the first, second and third proffered reasons for the promotion of Miller to District Manager were pretextual. Plaintiff has not presented sufficient evidence to rebut the contention that Miller showed more interest in the District Manager position. Secondly, the Plaintiff admitted that Miller stated he would quit if he did not receive the District Manager position in Dubuque. Finally, although Plaintiff did have some experience in Dubuque, Miller has lived in Dubuque since 1980, while Plaintiff lived in Seneca, Wisconsin when the District Manager position was created.

Because Plaintiff has not established that her working conditions from March 22, 2000 until September 2000 were discriminatory, Plaintiff cannot successfully argue her claim of constructive discharge. Therefore, Defendant's motion for summary judgment on the issues of sex discrimination, and constructive discharge as a result of that discrimination, is GRANTED.

---

[17] The Plaintiff contends that the only reason that should be considered is the fourth reason, because when questioned about why he hired Miller, Galindo stated that Miller "was doing the best job." (Def. Ex. K, Galindo Dep. II, p.142, lines 17-19), and that Galindo cannot now contradict this testimony to create different reasons for Miller's promotion based upon an affidavit. A subsequent affidavit may not be used to contradict a witness's deposition. See Piscione v. Ernst & Young, L.L.P., 171 F.3d 532-33 (7th Cir. 1999). However, Combined is correct when it argues that Galindo's deposition does not contradict his affidavit. At Galindo's deposition, Plaintiff did not ask why Galindo was doing a better job. Therefore, the Court will consider all four reasons Combined provides in analyzing Plaintiff's claim.

## V. Retaliation

### A. Plaintiff's Allegations of Retaliation

Boebel's claim of retaliation contains three timely charges: (1) Plaintiff was retaliated against for complaining about the discriminatory manner in which she was treated ; (2) Meisner retaliated against Boebel for making complaints against him to Galindo and made adverse employment decisions because of those complaints; and (3) Galindo also made employment decisions adverse to Boebel, in retaliation for her complaints against Meisner. Plaintiff's retaliation claim is indistinguishable from certain allegations of her discrimination claim. "While Title VII imposes liability for discrimination and retaliation, these are separate wrongs, and must be argued as such." Marting, 203 F. Supp. 2d 958, 971 (N.D. Ill. 2001) (citing Berry v. Delta Airlines, Inc., 260 F. 3d 803, 809-10 (7th Cir. 2001)); Heur v. Weil-McClain, 203 F.3d 1021, 1022-23 (7th Cir. 2000). However, the Court will analyze Boebel's allegations of retaliation.

### B. Facts

Plaintiff has alleged several of the same claims in her retaliation claim and hostile environment claim. Therefore, the Court incorporates by reference the facts listed in Sections III.B.1 and III.B.2 of the Discussion Section of this opinion with the following additional facts.

Meisner was aware that Boebel made complaints about him to Galindo. As a result, Meisner did not want Boebel to work in his district anymore. (Pl. Facts, ¶335). Every time she made a complaint about Meisner, Boebel's assignments became further away from her home, under both Miller and Meisner. ( Id. at ¶338). As a result of her complaints about Meisner, Galindo involuntarily transferred her to Miller's district. (Id. at ¶388).

### C. Analysis

Employers are prohibited from punishing employees for complaining about discrimination or other practices that violate Title VII. 42 U.S.C. § 2000e-3(a); Miller v. Am. Family Mutual Ins. Co., 203 F.3d 997, 1007 (7th Cir. 2000). A plaintiff may establish a prima facie case of retaliation under the direct or indirect method. Stone v. City of Indianapolis Pub. Util. Div., 281 F.3d 640 (7th Cir. 2002). Under the direct method, the plaintiff must present direct evidence of (1) a statutorily protected activity; (2) an adverse action taken by the employer; and (3) a causal connection between the two. Id. at 644.

Under the indirect method, a plaintiff must show: (1) she engaged in statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite her satisfactory job performance, she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. Id.; Hilt-Dyson v. City of Chicago, 282 F.3d 456, 466 (7th Cir. 2002). Once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to assert a legitimate, non-retaliatory reason for its actions. Griffin v. Board of Regents of Regency Universities, 795 F.2d 1281, 1294 (7th Cir. 1986). If the defendant rebuts the plaintiff's prima facie case in this manner, then she will have a chance to show that the defendant's proffered reasons are pretextual. Id.; Johnson v. University of Wisconsin-Eau Claire, 70 F.3d 469, 478-79 (7th Cir. 1995).

For the same reasons Plaintiff's sex discrimination claim fails, her retaliation claim fails. Boebel has failed to meet her burden of persuasion and show that she complained that she was

discriminated against because of her sex.[18] "An employee need not use the magic words 'sex' or 'gender discrimination' to bring her speech within Title VII's retaliation protections." Sitar v. Indiana Dept. of Transp., 344 F.3d 720, 727 (7th Cir. 2003). However, "she has to at least say something to indicate her [gender] is an issue. An employee can honestly believe she is the object of discrimination, but if she never mentions it, a claim of retaliation is not implicated, for an employer cannot retaliate when it is unaware of any complaints." Id. (quoting Miller, 203 F.3d at 1008). Plaintiff's own testimony indicates that she did not sufficiently allege gender discrimination. (Boebel Dep. II., p.218, line; p.219, line 5 (Def. Ex. B)).

Even assuming, arguendo, that Plaintiff did sufficiently allege sex discrimination when she made her complaints, Plaintiff has not shown that an adverse employment decision resulted because of these complaints. The one employment decision that has yet to be analyzed is Boebel's involuntary transfer from Meisner to Miller's district in June 2000, a decision made by Galindo. However, based on Plaintiff's reaction to this transfer, this transfer appears to be a reasonable measure to mediate the conflicts between Plaintiff and Meisner. The evidentiary record before the Court indicates that Boebel made repeated complaints about Meisner to Galindo, who then transferred Boebel to Miller's district. After the transfer, Boebel testified her job was less stressful, and that she was more comfortable with Miller, compared to Meisner. (See Pl.'s Resp. to Def. Facts, ¶¶ 114-15). This leads to the reasonable conclusion that the transfer was desirable to the Plaintiff. Further, although the transfer resulted in a longer commute for Boebel, this factor will not

---

[18] Boebel complained to Galindo, Meisner's supervisor, that Meisner : (1) required Boebel to attend all meetings; (2) refused to give Boebel blocks of business, while giving blocks of business to Miller; (3) prevented Boebel from performing her Sales Manager duties; (4) allowed his wife Sharon to hand out assignments; and (5) provided Miller with a higher percentage of his overrides that he did Boebel.

assist Plaintiff in establishing a prima facie case of discrimination. "The adverse action must materially alter the terms and conditions of employment. Negative performance reviews, a change in job title, an increased travel distance to work, do not by themselves qualify." Marting, 203 F.3d at 970-71 (citing Stutler v. Illinois Department of Corrections, 263 F.3d 698, 703 (7th Cir. 2000)).

Because the Plaintiff cannot establish a prima facie case of retaliation. Defendant's motion for summary judgment on the issue of retaliatory discharge is GRANTED.

**CONCLUSION**

Plaintiff's claims of hostile work environment sex harassment, sex discrimination, and retaliation cannot survive summary judgment. Therefore, Defendant's Motion for Summary Judgment is GRANTED in its entirety.

Enter:

**David H. Coar**

**United States District Judge**

Dated: January 16, 2004